WALTER, Plaintiff, vs. FOUR WHEEL DRIVE AUTO COM-
PANY and another, Defendants.

*December 5, 1933—January 9, 1934.*

For the defendant Four Wheel Drive Auto Company there were briefs by *Eberlein & Larson* of Shawano, and oral argument by *M. G. Eberlein.*

For the plaintiff Walter there was a brief by *Krugmeier & Witmer* of Appleton, and oral argument by *Joseph Witmer.*

For the defendant and cross-complainant Wagner there was a brief by *Chadek & Cornelisen* of Green Bay.

FRITZ, J. As a matter of brevity, the defendant corporation Four Wheel Drive Auto Company will hereinafter be referred to as the "Auto Company;" and an allied corporation named the Four Wheel Drive Sales Company will be referred to as the "Sales Company." The Sales Company was a separate corporation incorporated in 1929 to sell the entire output manufactured by the Auto Company. They had offices in the same building at Clintonville, Wisconsin, and Walter Olen was the president of both corporations.

The issues of fact raised by the pleadings, as indicated in the foregoing statement, were, excepting as to the amount of the damages recoverable, submitted to the jury for a special verdict, upon which the court ordered judgment in favor of the plaintiff and the defendant Wagner as stated above. On this appeal the Auto Company contends that the evidence does not warrant or support the jury's findings, and that the Auto Company is not responsible for Wagner's transactions because no contract or relationship was established between him and the Auto Company. In passing upon those contentions, there is applicable the rule that—

"If the evidence is conflicting, or if the inferences to be drawn from the credible evidence are doubtful and uncertain, and there is any credible evidence which under any

reasonable view will support or admit of an inference either for or against the claim or contention of any party, then the rule that the proper inference to be drawn therefrom is a question for the jury should be firmly adhered to, and the court should not assume to answer such question either upon a motion for nonsuit or direction of verdict, or by substituting another answer after the verdict is returned." *Trautmann v. Charles Schefft & Sons Co.* 201 Wis. 113, 115, 116, 228 N. W. 741.

It is undisputed that from 1920 to June, 1924, the defendant Wagner had sold trucks as a dealer at Green Bay for the Auto Company. After that time he had no business transactions with either that corporation or the Sales Company, excepting that in July, 1930, he had some correspondence with the latter in relation to an attempt on his part to sell a fire truck on a fifteen per cent. commission, and that in November and December, 1931, he worked for five weeks for the latter on special work to interest members of county boards in the purchase of the Auto Company's products. Between 1924 and 1930 Wagner had been engaged as a dealer in selling trucks manufactured by an Indiana concern. He had sold one of those trucks to the plaintiff, who resided at Appleton, and had subsequently resold that truck for the plaintiff.

The evidence, although in many respects conflicting and irreconcilable, admits of finding the following significant facts in support of the contentions of the plaintiff and Wagner: During 1931 Walter Olen, who was the president of the Auto Company and also the Sales Company, told Wagner, at the offices of the Auto Company, that he was dissatisfied with the service which the firm of Dahm & Fisher was rendering in hauling freight by truck for the Auto Company between Clintonville and Milwaukee and Waukesha, and he asked Wagner to look around for a reliable party to take over that hauling and told him that there might be an opportunity to sell a truck in connection with the promise of that trucking business.

Thereupon Wagner interested the plaintiff and his son, George Walter, Jr., and outlined to them Olen's proposition. He told them that the truck would cost $7,950, and invited them to come to Clintonville with Wagner to see Olen, and learn more about the proposition. Pursuant to that invitation, plaintiff's son accompanied Wagner to the Auto Company's office, where Olen, after questioning plaintiff's son as to plaintiff's responsibility, discussed with the son the earning possibilities in hauling the freight of the Auto Company with a six-wheel truck of its manufacture. Olen stated that he was very much interested in getting a responsible man to buy a six-wheel truck and take over the Auto Company's hauling, and that any one responsible, who could buy a Four Wheel Drive truck, could have the hauling of their freight. In that connection Olen then directed the Auto Company's purchasing agent to prepare for plaintiff's consideration data as to operating costs, earnings and profits of hauling that freight. Olen on that occasion also said to plaintiff's son, "Gene (meaning the defendant Wagner) knows all about it. All about what you need. He is perfectly capable of taking care of you." On the following day the Auto Company's purchasing agent sent the data as directed by Olen to Wagner. It showed a $500 monthly net profit after deducting depreciation on a truck valued at $8,000. Wagner, who took that data to the plaintiff, made copies thereof, and returned the original to Walter, who in turn returned it to the Auto Company.

On January 7, 1932, Wagner returned to Appleton and again discussed the data as to the earnings and profits of the trucking line with plaintiff and his son. The Auto Company had knowledge of Wagner's presence in Appleton for the purpose of closing the deal, and while he was there inquired of him by telephone whether he needed help. Plaintiff finally accepted the proposition by signing an order on a printed form of the Auto Company, which was then sub-

mitted by Wagner and which (omitting details under "specifications") is substantially as follows:

THE FOUR WHEEL DRIVE AUTO COMPANY

Clintonville, Wisconsin.

Enter order as follows, to be delivered.............F. O. B.
State When

Clintonville, Wisconsin, according to the following terms and specifications:

Barring delay due to Strikes, Boycotts, Conflagration and other causes beyond our control

Ship to          George Walter, Appleton

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

                    Specifications    .    Price
. . . and Tire carrier, Fire Ext.              $7950.00

Draw draft on: C. O. D. $5950.00
Bank on which draft should be drawn:

(To be approved by Sales Manager and subject to Conditions on the Back)

Terms: $2000.00 on acceptance of order—receipt of order —receipt of which is hereby acknowledged—balance when delivery of truck is tendered.

Purchaser          agree to pay all transportation charges.

Salesman    E. K. Wagner    Purchaser    George J. Walter
                                            202 N. State Str.

Accepted
The Four Wheel Drive Auto Co.
. . . . . . . . . . . . . . . . . . . . . . . (Sales Manager).

In connection with delivering that order to Wagner, plaintiff, on January 7, 1932, also gave him a certificate of deposit for $2,000, payable to plaintiff and indorsed by him. Wagner took both the order and the certificate directly to Olen's office at Clintonville, but Olen was absent. Wagner

showed the order and certificate to the sales manager of the Sales Company and told him about the transaction. However, as he had not participated in the negotiations, he would not accept either the order or the certificate. Instead, he requested Wagner to await Olen's return. Two days later Olen returned, and when Wagner submitted the order and the certificate, Olen told Wagner that he would not accept the order unless plaintiff would arrange to buy Dahm & Fisher's trucking business, and that $1,800 would be required to do that. Thereupon Wagner informed plaintiff to that effect, and the latter finally consented to pay that amount. But when Wagner told Olen that plaintiff had consented to do that, Olen said that $3,500 would be required to acquire that trucking business. That amount plaintiff refused to pay, and after conferences with Olen, which extended into April, 1931, the plaintiff demanded that the Auto Company and Wagner return the $2,000 which plaintiff had paid. Meanwhile, on January 14, 1931, Wagner had cashed the certificate of deposit and held the money. As neither the Auto Company nor Wagner repaid the $2,000 to plaintiff, he commenced this action to recover that amount, and the parties filed pleadings herein, as stated in the statement of facts filed herewith.

On the trial the jury found as follows:

"(1) Prior to January 7, 1931, the Auto Company by its president, Olen, did promise to give to plaintiff the trucking business of the Auto Company if plaintiff purchased a six-wheel truck.

"(2) The Auto Company, on or prior to January 7, 1931, did give Wagner proper and necessary authority to complete the negotiations for the sale of a truck to plaintiff under such promise.

"(3) Olen, by affirmative acts, did hold out Wagner as the agent of the Auto Company, having authority to unconditionally assure plaintiff that he could get the trucking business if he bought a truck without regard to Dahm & Fisher.

"(4) The Auto Company did, just prior to January 7, 1931, clothe Wagner with apparent authority as its agent to

take plaintiff's order for a truck with a down payment of $2,000.

"(5) Plaintiff was justified in the exercise of reasonable prudence in believing that Wagner had authority as agent for the Auto Company to accept plaintiff's order with a down payment of $2,000.

"(6) (a) Wagner was not a dealer to whom a truck was sold with a discount which he was entitled to for compensation. (b) He was an employee who was to receive a commission from the Auto Company as wages.

"(7) At or before the signing of the order on January 7, 1931, by plaintiff, Olen had not informed plaintiff's son that if a responsible man would open a trucking line to Milwaukee, Clintonville, and Antigo, and arrange to eliminate the other trucking company and buy a Four Wheel Drive truck he would favor the man with the trucking for the Auto Company.

"(8 and 9) That at the time of procuring the order from plaintiff Wagner did not falsely represent that if plaintiff signed the order and paid $2,000 to him that he would procure the trucking business of the Auto Company and plaintiff did not rely upon a misrepresentation to that effect.

"(10) That Wagner did act in good faith in obtaining the plaintiff's order and did truthfully state the conditions upon which the Walters could obtain the trucking of the Auto Company."

As those findings are in accord with the facts, as stated above, which are reasonably inferable from the evidence, the credibility and weight of which, as well as the proper inferences to be drawn therefrom, were all questions for the jury, we are not warranted in disregarding those findings after the approval thereof by the trial court in ordering judgment thereon. Thus, under the evidence it was within the province of the jury to believe that, when Wagner, shortly prior to January 7, 1931, brought plaintiff's son to Olen, the latter discussed with them at length the proposed purchase by plaintiff from the Auto Company through Wagner's solicitation, of a truck to be used by plaintiff's son in hauling freight for the Auto Company; that the proposition then made by Olen was substantially the same as had been stated by him

to Wagner when Olen had asked Wagner to look around for a responsible party to purchase one of the Auto Company's trucks under a promise to be given the hauling of its freight, and as had been stated by Wagner to plaintiff; that Olen at that conference said to plaintiff's son, "Gene, he knows all about it. All about what you need. He is perfectly capable of taking care of you," and that Wagner would take care of plaintiff satisfactorily; that that conference was followed by the Auto Company sending Wagner, at Olen's directions, for presentation by Wagner to plaintiff, the data in relation to the probable profit of hauling the promised freight for the Auto Company, if plaintiff purchased the truck from it; and that when, a week later, plaintiff accepted the very proposition which had been discussed by Olen in the conference with plaintiff's son and Wagner, the latter had submitted to plaintiff for his signature the Auto Company's printed form, which, as prepared by the latter, had a blank space for the insertion of the amount of a payment, which that printed form indicated was to be made on the acceptance of the order, and in relation to which there was the printed statement, "the receipt of which is hereby acknowledged." Furthermore, it was within the jury's province under the evidence to believe that, although that signed order was left with Olen, and showed on its face that $2,000 had been received from plaintiff when it was signed by him, Olen did not notify plaintiff that Wagner was not authorized to accept that payment, and that it had not been received by the Auto Company; and that, instead of so notifying plaintiff, the Auto Company, by its submitting through Wagner, without repudiating his authority, counter propositions for the acquisition of the Dahm & Fisher trucking business for $1,800, and subsequently for $3,500, delayed until April, 1931, the demand of plaintiff for the return of that payment. All of those significant facts, if found by the jury, warranted in all respects the verdict returned by the jury.

The ultimate question under the issues in this action, so far as plaintiff is concerned, is not whether Wagner had authority to finally bind the Auto Company to sell the truck without an acceptance of the order on the printed form, by the signature of the Auto Company's sales manager, but is merely whether plaintiff was justified in believing, in view of appearances for which the Auto Company was responsible, that Wagner possessed authority, as agent of the Auto Company to receive on its behalf from plaintiff the down payment in connection with soliciting and obtaining plaintiff's signature to his order on the printed form provided by the Auto Company. The conclusion that plaintiff was so justified and that the Auto Company is responsible to plaintiff for all of Wagner's acts in those respects, is well within the rule that "if a third person, because of appearances for which the principal was responsible, believes and has reasonable ground to believe that the agent possessed power to act for the principal in the particular transaction, if such third person was, in the exercise of reasonable prudence, justified in believing that the agent possessed the necessary authority, then the principal is responsible to such third person the same as if the agent possessed all the power he assumed to possess." *McDermott v. Jackson,* 97 Wis. 64, 72 N. W. 375; *Voell v. Klein,* 184 Wis. 620, 622, 200 N. W. 364; *Zummach v. Polasek,* 199 Wis. 529, 227 N. W. 33; *Commonwealth Tel. Co. v. Paley,* 203 Wis. 447, 233 N. W. 619; *Prah v. Ebener,* 200 Wis. 40, 227 N. W. 256.

As is stated in sec. 62, on the subject of Agency, in Restatement of the Law, an agent's authority to contract for a purchase on terms by which part or all of the price is payable at the time when the contract is made "includes authority to pay or receive so much of the price as is payable at such time." In connection with that conclusion, there is the comment that there may be a usage to make a payment when the contract is made and before the transfer of title, where ar-

ticles are to be manufactured or shipped to the purchaser's order. This court recognized in *Voell v. Klein, supra,* that a sale according to trade usage may bind the principal, although he would not be bound when there was a departure from the trade usage. In the case at bar, such usage is evidenced by the fact that the Auto Company's printed form had a blank space for a down payment, and also a printed acknowledgment of the receipt of such a payment.

Furthermore, the Auto Company's failure, upon Wagner's submittal to Olen of the signed order, which on its face indicated the down payment, to notify plaintiff with reasonable promptness that Wagner had acted without authority, and that it had not accepted the down payment, admits of the inference that there was such acquiescence on its part as constituted affirmance of Wagner's receipt of that payment on behalf of the Auto Company, even though the receipt thereof by him, on behalf of the Auto Company, was not authorized by it prior thereto. As is stated on the subject of agency in Restatement of the Law:

"An affirmance of an unauthorized transaction may be inferred from a failure to repudiate it." Sec. 24.

"Acquiescence by the principal in conduct of an agent whose previously conferred authorization reasonably might include it, indicates that the conduct was authorized; if clearly not included in the authorization, acquiescence in it indicates affirmance." Sec. 43.

That is in accord with the rule as stated by this court, viz.:

"When an agent acts in excess of the authority conferred upon him, and the person for whom he has undertaken to act is fully notified of what has been done, it becomes the duty of the principal to either affirm or disaffirm the act of the supposed agent within a reasonable time after such notice or he is bound by such act." *Senger v. Malloy,* 153 Wis. 245, 141 N. W. 6; *Francis H. Leggett & Co. v. West Salem C. Co.* 155 Wis. 462, 144 N. W. 969; *Gnat v. Westchester F. Ins. Co.* 167 Wis. 274, 167 N. W. 250; *Advance-Rumely Thresher Co. v. Born,* 189 Wis. 309, 206 N. W. 904.

On the other hand, if Wagner had authority, as found by the jury, to receive that down payment, then the Auto Company, as the principal, and not Wagner, is liable to the plaintiff for the return of that payment upon the refusal of the Auto Company to consummate the sale.

". . . Where the agent is known as such to the third person and the payment to him is a proper one, in pursuance of a valid authority, and without fraud, duress, or mistake, the third person's remedy, in case he ultimately becomes entitled to a return of the money, is against the principal, and he cannot hold the agent individually liable for its return, although he has not paid it over to his principal." 2 Corp. Jur. p. 821; *Fisher v. Meeker,* 118 App. Div. 452, 103 N. Y. Supp. 261; *Cooper v. Tim,* 16 Misc. 372, 38 N. Y. Supp. 67, 68; *Mathews v. O'Shea,* 45 Neb. 299, 63 N. W. 820; *Wright v. Merritt Realty Co.* 148 Wash. 830, 268 Pac. 873.

When liability for money received by an agent exists on the part of his principal, the fact that it was thereafter embezzled or was misappropriated by the agent does not relieve or affect the principal's liability. *Breuer v. Arenz,* 202 Wis. 453, 233 N. W. 76; *Livingston County T. Co. v. Green Bay C. Co.* 204 Wis. 256, 234 N. W. 346.

In regard to Wagner's recovery of additional commission on his cross-complaint, the jury's findings that he was authorized to complete negotiations for the sale as an employee who was to receive a commission as compensation, and that he acted truthfully, without misrepresentation, and in good faith in obtaining the order from plaintiff, entitled him to a commission as compensation for procuring plaintiff as a purchaser, if the Auto Company was not justified in refusing to accept plaintiff's order. As it refused to do that because it repudiated the promise, which the jury found Olen had made prior to January 7, 1931, to give to plaintiff its trucking business if he purchased the truck, its refusal was without legal excuse, and consequently Wagner was entitled to a commission as compensation for his services. However,

without any specific finding by either the jury or the court as to the rate or the manner in which the amount of Wagner's commission was to be determined, the court on motions after verdict ordered judgment in his favor for $385.15 with interest. That amount was an allowance in addition to the $2,000 which plaintiff had paid and Wagner had retained. Altogether that would give him $2,385.15 as his commission, which would be thirty per cent. of the purchase price of $7,950. The evidence does not seem to justify that rate of commission. The nearest approach thereto in the record seems to be testimony given by Olen that when Wagner sold trucks for the Auto Company as a dealer from 1920 to 1924, he was not paid a commission, but received a dealer's discount, which varied on different models from time to time; that during the last half year of his connection as a dealer his discount was thirty per cent. on a cash deal; and that that was the arrangement before the organization of the Sales Company in 1929. That issue as to the rate of Wagner's commission was evidently not fully tried, and the record in that respect is incomplete and does not afford a satisfactory basis for any finding on that subject to a reasonable certainty. Consequently, it is necessary and proper under sec. 251.09, Stats., to reverse that portion of the judgment which provides for the recovery of $385.15 with interest and costs by Wagner from the Auto Company, and to remand the cause for a retrial of that issue between the defendants as to the amount of the commission which Wagner was entitled to receive from the Auto Company. Otherwise the record discloses no basis for reversal.

Plaintiff's testimony as to statements made by Wagner in negotiating with plaintiff, that Olen wanted some one to purchase a truck from the Auto Company to haul its freight, etc., and as to what he said in relation to the probable earnings of the truck, were admissible as part of the *res gestæ* at the time of the negotiations, which resulted in obtaining the order from plaintiff. The purpose of the testimony as to those statements was not to establish Wagner's authority by

his own declarations as to his agency. Testimony as to such declarations, if offered solely for that purpose, would have been incompetent. *Stevens v. Montfort State Bank,* 183 Wis. 621, 629, 198 N. W. 600. However, mere declarations by Wagner were not relied upon by him or plaintiff to establish Wagner's agency. Its existence was established, or at least inferable, from numerous other facts and circumstances proven by competent testimony hereinbefore discussed, and particularly that of plaintiff's son and Wagner as to what was said by Olen in relation to Wagner during the conferences between those three persons. There is one statement, which was testified to by Wagner, that may have been incompetent because it was a declaration as to his agency. In testifying as to his conversation with plaintiff after Olen had proposed that Wagner inform plaintiff that $1,800 would be required to acquire the Dahm & Fisher trucking business, Wagner testified: "I told him Mr. Olen directed me to do that, and said to take over a truck which is operated between Clintonville and Milwaukee, take over that truck at $1,800," etc. However, as the fact that Olen had directed Wagner at that stage of the transaction to propose that plaintiff acquire that trucking business for $1,800 was otherwise established beyond reasonable dispute, there is no sound basis for holding that the admission of that testimony constituted prejudicial error.

*By the Court.*—Judgment affirmed, in so far as it provides for the recovery by plaintiff of $2,240 with interest and costs from the Four Wheel Drive Auto Company. Judgment reversed and cause remanded with directions to grant a new trial solely between the defendants, on the issue as to the amount of the commission which the defendant E. K. Wagner was entitled to receive from the defendant Four Wheel Drive Auto Company, and the determination of such issues of law as may exist under the cross-complaints herein upon the determination of that issue as to the amount of that commission.